WHEELER-STENZEL COMPANY *vs.* AMERICAN WINDOW GLASS COMPANY & trustees.

Suffolk.   January 11, 1909. — June 22, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Malicious Interference.   Pleading, Civil,* Declaration.   *Unfair Competition. Sherman Act.*

In a declaration in an action for maliciously inducing another person to break his contract with the plaintiff, it is not necessary to set out the statements, if any, which were made by the defendant to induce the third person to break the contract.

In the declaration, in an action for maliciously inducing another person to break his contract with the plaintiff, it is not necessary to set out the contract between the plaintiff and the third person.   It is sufficient to state its effect so far as it is material.

A declaration alleged that the plaintiff was a corporation, organized under the laws of this Commonwealth for the purpose among others of jobbing or retailing window glass, with its principal place of business in Boston, that it had been engaged for many years in jobbing and retailing window glass to customers, principally in Boston and New England, and that it and other window glass jobbers throughout the United States entered into contracts with an association called the National Window Glass Jobbers Association, by which the association agreed to purchase window glass in large quantities from the manufacturers thereof, principally the defendant, and to sell it to the plaintiff and the other jobbers, that the plaintiff under its contract was entitled to receive from the association a large quantity of window glass, namely, two hundred thousand boxes, but that the defendant, with knowledge of the contract between the plaintiff and the association, and with intent to injure the plaintiff in its business, maliciously induced the association to break its contract with the plaintiff and to refuse to deliver to it any of the window glass to which the plaintiff was entitled.   The defendant demurred to the declaration, contending

that the contract between the plaintiff and the association, as described in the declaration, was in unlawful restraint of trade, and was illegal both at common law and under 26 U. S. Sts. at Large, c. 647, commonly known as the Sherman act, and therefore that the interference of the defendant to prevent the performance of the contract was justified as fair trade competition. *Held,* that there was nothing in the contract described in the declaration in violation of the Sherman act, so called, nor anything tending to create a monopoly or to operate in restraint of trade at common law, and that the demurrer should be overruled, the plaintiff having stated a case on which it was entitled to recover damages from the defendant for knowingly and maliciously inducing the association to break its contract with the plaintiff.

MORTON, J.   This is an action of tort to recover damages of the defendant for maliciously inducing the National Window Glass Jobbers Association to break a contract which it is alleged to have entered into with the plaintiff, and to refuse to deliver to the plaintiff window glass to which it was entitled under the contract.   The declaration is in two counts and there was a demurrer to each count.   The causes assigned for demurrer are the same as to both counts except that the demurrer to the second count assigns as an additional cause that that count shows that there was no contract between the plaintiff and the Jobbers Association.

The presiding judge * overruled the demurrers, but, being of opinion that the questions raised so affected the merits of the controversy that the matter ought to be decided by the full court before further proceedings, reported the case to this court.

One of the causes of demurrer common to both counts is that neither count states a legal cause of action substantially in accordance with the rules contained in R. L. c. 173.   Other causes of demurrer common to both counts and relating more to matters of form are that neither copies of the contract of the plaintiff with the Jobbers Association nor sufficient parts therof are annexed to the declaration as required by the statute, and that the means by which the defendant induced the Jobbers Association to break the contract are not set out.

Each count alleges that the defendant not only induced the Jobbers Association to break its contract with the plaintiff, but that it maliciously induced the association to do so.   Neither count sounds in slander as in *May* v. *Wood,* 172 Mass. 11, which the court has manifested a disinclination to extend further

---

* *Fessenden, J.*

(*McGurk* v. *Cronenwett*, 199 Mass. 457, 460), and it was not necessary to set out the statements, if any, that were made by the defendant to the association to induce it to break its contract. It is well settled that it is actionable to maliciously induce another to break his contract with the plaintiff. The gist of the action is maliciously or without justifiable cause inducing another to break his contract with the plaintiff and the means by which it is done are immaterial. *Walker* v. *Cronin*, 107 Mass. 555. *Moran* v. *Dunphy*, 177 Mass. 485. *Beekman* v. *Marsters*, 195 Mass. 205. *McGurk* v. *Cronenwett*, 199 Mass. 457. It is not seriously contended that a contract between the plaintiff and the Jobbers Association is not sufficiently alleged in the second count. See *O'Connor* v. *North Truckee Ditch Co.* 17 Nev. 245. It follows that a legal cause of action was stated in each count. It was not necessary to set out the contract between the plaintiff and the Jobbers Association. The effect of the contract was sufficiently stated so far as material and both counts conformed so far as the several causes of demurrer which we have been considering are concerned to approved precedents. *McGurk* v. *Cronenwett, supra*, second count. *Moran* v. *Dunphy, supra*, second count. *Walker* v. *Cronin, supra.*

The principal question raised by the demurrer and the one on which the defendant chiefly relies is that the contract or arrangement set out in the declaration between the plaintiff and the Jobbers Association is in restraint of trade and therefore illegal both at common law and under the Sherman act so called (26 U. S. Sts. at Large, c. 647, approved July 2, 1890), and that what the defendant did was justifiable as fair trade competition. This requires a scrutiny of each count in order to determine whether the allegations have the scope and effect which the defendant contends that they have.

Passing over the introductory averments, the first count alleges that in furtherance of its business as a window glass jobber the plaintiff in connection with other window glass jobbers throughout the United States entered into contracts in December, 1899, with the National Window Glass Jobbers Association by which the association agreed to purchase window glass in large quantities and distribute the glass so purchased in accordance with the contracts to the plaintiff and the other contracting

parties; that pursuant to such contracts the association purchased large quantities of window glass from the manufacturers thereof, principally the defendant, and that under its contract with the association the plaintiff was entitled to receive from the association a large quantity of the window glass so purchased, namely not less than two hundred thousand boxes, but that the defendant with knowledge of the contract between the plaintiff and the association and intending to injure the plaintiff in its business maliciously induced the association to break its contract with the plaintiff and to refuse to distribute to the plaintiff any of the glass purchased as aforesaid, and because of such action on the part of the defendant the Jobbers Association has refused and still refuses to distribute to the plaintiff its proportion of the glass so purchased to the great damage, etc.

The introductory averments of the second count are the same as those of the first count, and the plaintiff then proceeds to allege in the second count that, in furtherance of its business as a window glass jobber, it subscribed in December, 1899, in the name of its treasurer for fifteen shares of the capital stock of the National Window Glass Jobbers Association of the par value of $100 each and paid the treasurer of that association in full for such subscription and also paid such dues and assessments as were levied upon and became payable in respect of the stock; that one of the objects of the association was to purchase window glass in large quantities of the manufacturers thereof and distribute the glass so purchased to its stockholders in certain proportions named in certain resolutions of said association; that, between the purchase of and payment for the shares aforesaid by the plaintiff and the date of the writ, the association purchased large quantities of window glass of the manufacturers thereof, principally of the defendant, and that the plaintiff became entitled under the resolutions and regulations of the association by reason of being a stockholder to a large quantity of window glass, to wit, two hundred thousand boxes from the association, and that the association recognized its obligation to distribute to the plaintiff such proportion of the window glass so purchased by it, but that the defendant with knowledge of such obligation on the part of the association and with intent

to injure the plaintiff in its business maliciously induced the association to violate its obligation to the plaintiff by refusing to distribute to the plaintiff any of the window glass purchased as aforesaid.

The only substantial difference between the two counts is that in the first count the contract is alleged to have been directly between the plaintiff and the Jobbers Association, and in the second count the contract is alleged to have arisen out of the relation of the plaintiff to the Jobbers Association as a stockholder in the association. We do not, however, regard the difference as material.

The sum and substance of both counts is that the plaintiff is a corporation duly incorporated under the laws of this Commonwealth for the purpose amongst others of jobbing and retailing window glass, with its principal place of business in Boston ; that it has been engaged for many years in jobbing and retailing window glass to customers principally in Boston and New England, and that in connection with other window glass jobbers throughout the United States it entered into contracts with the National Window Glass Jobbers Association by which the association agreed to purchase large quantities of window glass and distribute the same amongst the contracting parties ; that said association did purchase window glass in large quantities from the manufacturers thereof, principally the defendant, and that under its contract the plaintiff was entitled to receive from the association a large quantity of window glass, namely, two hundred thousand boxes ; but that the defendant with knowledge of the contract between the plaintiff and the association and with the intent to injure the plaintiff in its business maliciously induced the association to break its contract with the plaintiff and to refuse to deliver to it any of the window glass to which the plaintiff was entitled.

We are unable to discover in the cause of action thus set out anything repugnant to or in violation of the Sherman act, so called, or anything tending to create a monopoly or to operate in restraint of trade at common law. It is perhaps a fair inference that the National Window Glass Jobbers Association is formed, as its name implies, of jobbers in window glass throughout the United States. But it does not appear, if material, what

proportion of the window glass jobbers in the United States is included in the association. It may be a large proportion or it may be a small proportion. But whether large or small there can be no doubt, we think, that those included in the association had a right to combine and appoint a common agent, which, according to the allegations of the declaration, was in effect what was done, to make purchases of window glass for them, and to distribute the window glass so purchased amongst them according to contracts severally entered into by them with such agent. They had the right to enter into such an arrangement even though one of the objects of it was to avoid competing with each other in the market for window glass. It is not every combination that is unlawful or in restraint of trade under the Sherman act, but only such as tend directly to interfere with and to create a monopoly in or to restrain interstate commerce. *United States* v. *Knight Co.* 156 U. S. 1. *Hopkins* v. *United States,* 171 U. S. 578. *Anderson* v. *United States,* 171 U. S. 604. We are, of course, confined to the allegations contained in the declaration, and there is nothing in either count to show that a monopoly or restraint of interstate commerce was intended or created by the arrangement which was entered into. For aught that appears any jobber in window glass could become a member of the association and contract with it. There is no limit as to the prices to be paid by the association, or the quantities to be purchased or the manufacturers from whom the purchases shall be made. The members of the association are not obliged to purchase from or through it, but may, so far as appears, purchase elsewhere without any restriction as to price or quantity, and may sell anywhere and to any one and on such terms as they see fit. If a jobber in any given locality undertakes to create a monopoly, there is nothing to prevent other jobbers from underselling him if they are able and are disposed to do so. Any advantage which one jobber may have over others by reason of his situation and which may enable him to meet and perhaps defy competition, is an advantage to which he is entitled, notwithstanding he is or may be enabled by means of the combination to purchase glass cheaper than he would otherwise be able to purchase it and thereby to assure his lead over his competitors. It is not alleged either expressly or by

necessary implication that the object of the association is to restrain or monopolize interstate commerce. If the association has any such effect, it is too indirect and remote to be the subject of consideration. But by enabling those contracting with it to buy window glass on more advantageous terms, it would seem that the arrangement tended rather to encourage than to restrain or monopolize interstate trade and commerce. The free flow of commerce between the States is not interfered with, directly at least, in any manner, and it is plain, we think, that neither at common law nor under the Sherman act was or is there anything unlawful in the contracts relied on or in the circumstances under which they were entered into. See *Central Shade Roller Co.* v. *Cushman,* 143 Mass. 353. Whether in view of the facts alleged in the case of *Wheeler-Stenzel Co.* v. *National Window Glass Jobbers' Association,* 152 Fed. Rep. 864, where the demurrer was sustained, the plaintiff can finally prevail is not a matter for us to consider. In *Edwards* v. *National Window Glass Jobbers Association,* 68 Atl. Rep. 800, the validity of the contract does not appear to have been questioned.

It is manifest that to knowingly and maliciously induce another to break a contract with the plaintiff is not justified by fair trade competition.

*Demurrer overruled.*

*R. M. Morse & C. B. Southard,* (*T. Parker* with them,) for the defendant.

*H. E. Bolles & B. E. Eames,* for the plaintiff.