**Paul L. SRIBERG and Roll Form Products, Inc.**

v.

**James J. RAYMOND et al.**

**Civ. A. No. 75–699–C.**

United States District Court, D. Massachusetts.

May 21, 1976.

---

Robert S. Wolfe, Sriberg, Berman & Wolfe, Boston, Mass., for plaintiffs.

Thomas R. Paxman, Robert G. Stewart, Hutchins & Wheeler, Boston, Mass., for defendants.

## OPINION

CAFFREY, Chief Judge.

This is an action of tort brought by Paul L. Sriberg, a resident of Massachusetts and President of Roll Form Products, Inc., the corporate plaintiff, against individual residents of Missouri and corporations organized under the laws of Missouri. Count I of the complaint purports to set out a claim for libel and Count II purports to set out a claim for intentional interference with advantageous business relations. The matter came before the Court on the basis of defendants' motions to dismiss. Prior to ruling on the motions to dismiss this Court certified to the Supreme Judicial Court of Massachusetts a question of Massachusetts law previously unresolved by any opinion of the Supreme Judicial Court. The facts which give rise to the controversy are substantially agreed upon by the parties to be as follows:

Plaintiff Paul L. Sriberg was president and the majority stockholder, at all times material to this action, of a corporation called Roll Form Products, Inc. (Roll Form). On January 24, 1975, Roll Form entered into a contract with Southwest Truck Body Co. (Southwest) a corporation organized under the laws of the State of Missouri. Its attorney at that time was defendant James J. Raymond, a resident of Missouri, and his professional legal corporation organized under the laws of the State of Missouri. The contract provided for Roll Form to purchase stock in Mac-Fab Products, Inc. (Mac-Fab) for the sum of $750,000. The contract provided that Shawmut Credit Corporation, an affiliate of the National Shawmut Bank of Boston, would hold in escrow $100,000 deposited with Shawmut Credit Corporation by Roll Form. This sum was characterized as "earnest money," to be credited against the purchase price. February 24, 1975 was the agreed upon closing date for the purchase and sale of the Mac-Fab stock.

On February 12, 1975, Roll Form notified Southwest of its refusal to close the transaction. In response, defendant Raymond sent to plaintiff Sriberg the allegedly libelous letter which gives rise to the certification. The pertinent provisions of the letter read as follows:

"Your persistence, against this backdrop, of a meritorious basis for repudiation is a sham. Your conduct in this respect is reckless, willful and malicious. It severely injures Mac-Fab as well as Southwest and, in view of the full manifestation of management control your people have exerted over Mac-Fab in the industry, a vast monetary amount will be required to duplicate the posture in which Mac-Fab and Southwest would have been had you closed your purchase as agreed in

writing. It is quite obvious that you are attempting to appropriate Mac-Fab's business without payment.

" . . . If these demands are not met, suit will be instituted against Roll Form and Shawmut for actual and exemplary damages, including without limitation damages for Roll Form's misappropriation of Mac-Fab's business information communicated in connection with this purchase and in confidence, as well as for Roll Form's taking and asportation of Mac-Fab's customer orders and Roll Form's severe injury to the business reputation of Mac-Fab and its management. Injunctive relief likewise will be sought in the foregoing respects.

"Mr. Sriberg, this choice is yours!"

On February 24, 1975 the transaction was not completed and the Shawmut Credit Corporation did not turn over the $100,000 it held as escrow agent.

Thereafter, Southwest commenced a civil action against Roll Form in the United States District Court for the Eastern District of Missouri, alleging anticipatory breach of contract by Southwest and breach of fiduciary duty by Shawmut Credit Corporation.

■ The Supreme Judicial Court handed down an opinion on April 8, 1976, answering the question in the affirmative. This ruling obviously disposes of Count I which purports to be an action of libel. I rule that it also disposes of Count II of the complaint because, while denominated as a cause of action for interference with advantageous business relations, the thrust and gravamen of Count II is a re-allegation of all the operative facts alleged in Count I, which amounts to a claim that the absolutely privileged letter constituted tortious conduct on the part of defendants. As an alternate ground for dismissal of Count II, I rule that Count II fails to allege that the defendants' letter intentionally induced a third party to discontinue an established business relation, or to breach a particular contract. Such an allegation is required under Massachusetts law to state a claim for the tort set forth in Count II. *Vigoda v. Barton,* 338 Mass. 302,

304, 155 N.E.2d 409 (1959); see cases cited in *Owen v. Williams,* 322 Mass. 356, 360, 77 N.E.2d 318 (1948). The plaintiffs have not made such an allegation merely by restating the first seven paragraphs of Count I. Furthermore, the object of defendants' absolutely privileged letter was not to discontinue a business relation or breach a contract, but to urge continuance and performance of a contract.

It should be noted that defendants have attached to their motion to dismiss a copy of a complaint filed by defendant Raymond as counsel for defendant Southwest Truck Body Company on March 17, 1975 in the United States District Court for the Eastern District of Missouri, which case has been transferred to and is now pending before another Judge of this court. I note further that the filing of the lawsuit, which was threatened in defendant Raymond's absolutely privileged letter of February 12, 1975, followed three weeks after the closing date under the contract at issue, a copy of which defendants have also put on file.

■ The Court has considered defendants' motion to dismiss, with the attached materials, as a motion for summary judgment under Rule 56, Fed.R.Civ.P. I have compared the complaint in the Missouri case now transferred to this court to the absolutely privileged letter and the contract at issue among the various parties in the transferred case. I rule that at jury trial these documents would require that the Court direct a verdict that the lawsuit threatened in the absolutely privileged letter was under serious consideration and contemplated in good faith. Because the Court would direct a verdict on that issue, I rule that no genuine issue of material fact exists in the case, and that since the defendants are entitled to judgment as a matter of law on the grounds of absolute privilege, summary judgment for defendants is appropriate. See *Sartor v. Arkansas Natural Gas Co.,* 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967, 970 (1943); *United States v. J. B. Williams Co.,* 498 F.2d 414, 432 (2 Cir. 1974); *Feldman v. Birger,* 205 F.Supp.

87, 88 (D.Mass.1962); 6 *Moore, Federal Practice,* ¶¶ 56.11[3], 56–243 n. 33 (1976).

Judgment accordingly.